**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

UNITED FINANCIAL CASUALTY COMPANY,

     Plaintiff,

     v.                                             Civ. No. 20-867 JAP/CG

DIANA MORALES d/b/a ROBERG TRUCKING,
*et al.*,

     Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

On August 27, 2020, Plaintiff filed a COMPLAINT FOR DECLARATORY JUDGMENT

RELIEF ("Complaint") (Doc. 1), seeking a declaration of no coverage under a Commercial Auto

Policy, Compl., Ex. A ("Policy") that it issued to Diana Morales d/b/a Roberg Trucking

("Defendant Morales" or "Roberg").  The request arises from two ongoing lawsuits filed in New

Mexico state court, where Plaintiff is currently defending Defendant Morales under a reservation

of rights in both causes of action.

On October 21, 2020, Defendants Todd M. Lopez, Yulma Fernandez-Renteria, and Maria

Guadalupe Grado-Sanchez ("Estate Defendants") filed a MOTION TO DISMISS (Doc. 6)

("Motion") under *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994), requesting

that this Court decline to exercise its discretionary jurisdiction over this federal declaratory

judgment case, because Estate Defendants believe that the underlying New Mexico state court

litigation controls whether certain Policy exclusions abrogate Plaintiff's duty to defend and

indemnify Defendant Morales.[1]  Alternatively, if the Court retains jurisdiction, Estate Defendants

---

[1] The Court notes the extraordinary posture of this Motion.  Plaintiff has no duty to defend or indemnify Estate Defendants but they still brought this Motion, in part, to argue that Plaintiff must continue defending non-movant Defendant Morales in the two underlying New Mexico state court lawsuits.

1

move to (1) partially dismiss Plaintiff's Complaint under Rule 12(b)(6) and (2) stay all remaining proceedings pending further factual development in the two New Mexico state court lawsuits.[2] The Court will GRANT IN PART and DENY IN PART the Motion for the following reasons.

## I.   BACKGROUND[3]

### A.  The Relevant Policy Provisions

Plaintiff issued the Policy to Defendant Morales, who is the sole proprietor of Roberg Trucking ("Roberg"), for a coverage period of June 27, 2018, through June 27, 2019.  Compl. ¶ 16.  The Policy listed two vehicles: (1) a 2007 International 941, VIN 2HSCNAPR47C404082, and (2) a 2019 Intermit Trailer, VIN 3AKK402W7KJ030014.  *Id.* ¶ 17.  Six Policy exclusions are at issue in this declaratory judgement action: (1) Punitive Damages, (2) Worker's Compensation, (3) Employee Indemnification and Employer's Liability ("Employer's Liability Exclusion"), (4) Fellow Employee, (5) Operations, and (6) Medical Payments Coverage Endorsement ("Medical Endorsement Exclusion").  *Id.*, *passim.*

#### 1)  *General Definitions*

The Policy includes the following general definitions, in relevant part:

**Accident** means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage.

**Auto** means a land motor vehicle or trailer designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include mobile equipment.  Self-propelled vehicles

---

[2] The Motion is fully briefed.  *See* MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (Doc. 7); UNITED FINANCIAL CASUALTY COMPANY'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS [DOC. 6] (Doc. 16); DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION [DOC.16] TO PENDING MOTION TO DISMISS [DOCS. 6,7] (Doc. 20).

[3] Because the Estate Defendants seek partial dismissal if the Court retains jurisdiction, the Court will include all relevant facts here and accept as true the factual allegations in the Complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not, however, accept as true any legal conclusions within the Complaint.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

with the following types of permanently attached equipment are autos, not mobile equipment:

   a.  equipment designed and used primarily for:
     (i) snow removal;
     (ii) road maintenance, but not construction or resurfacing;
     (iii) street cleaning;
   b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

**Mobile equipment** means any of the following types of land vehicles including, but not limited to, any attached machinery or equipment:

Vehicles not described in Paragraphs a., b., c., or d. above that are self-propelled and used primarily for purposes other than transportation of persons or cargo. However, mobile equipment does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle law are considered autos.

**Occupying** means in, on, entering or exiting.

**Trailer** includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

*Id.*, Ex. A at 6–9.[4]

   *2) Definitions Applicable to Part I-Liability To Others ("Part I")*

The following definition applies only to Part I of the Policy:

**Insured means**:
   1.     You with respect to an insured auto.
   2.     Any person while using, with your permission, and within the scope of that permission, an insured auto you own, hire, or borrow except:
        a)  A person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing autos, unless that business is yours and it was so represented in your application.
        b)  A person, other than one of your employees, partners (if you are a partnership), members (if you are a limited liability company), officers or directors (if you are a corporation), or a lessee or borrower or any of their employees, while he or she is moving property to or from an insured auto.

---

[4] The Court cites to the CM/ECF pagination for all exhibits.

c) The owner or anyone else from whom the insured auto is leased, hired, or borrowed unless the insured auto is a trailer connected to a power unit that is an insured auto. However, this exception does not apply if the insured auto is specifically described on the declarations page.

For purposes of this subsection A.2., an insured auto you own includes any auto specifically described on the declarations page.

*Id*. at 10.

### 3) *Part I: Relevant Exclusions*

Part I of the Policy excludes "punitive or exemplary damages" for bodily injury and property damage.  *Id*. at 10.  In addition, coverage does not apply to:

**Worker's Compensation.**  Any obligation for which an insured or an insurer of that insured, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability law, or any similar law.

**Employee Indemnification and Employer's Liability**
**Bodily injury to:**
   a.  An employee of any insured arising out of or within the course of:
      (i)  That employee's employment by any insured; or
      (ii) Performing duties related to the conduct of any insured's business; or
   b.  The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph a. above.

This exclusion applies:
   a.  Whether the insured may be liable as an employer or in any other capacity; and
   b.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**Fellow Employee Bodily injury to:**
   a.  a fellow employee of an insured injured while within the course of their employment or while performing duties related to the conduct of your business.
   b.  the spouse, child, parent, brother, or sister of that fellow employee as a consequence of Paragraph a. above.

**Operations.**  Bodily injury, property damage, or covered pollution cost or expense arising out of the operation of:
a.  any equipment listed in Paragraphs b. and c. of the definition of auto; or
b.  machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of mobile equipment if it were not subject to

a compulsory or financial responsibility law where it is licensed or principally garaged.

*Id.* at 13–15.

    *4)  Medical Payments Coverage Endorsement and Exclusion*

Finally, the Policy includes the following medical coverage endorsement and relevant exclusion:

**INSURING AGREEMENT**

Subject to the limits of liability, if you pay the premium for Medical Payments Coverage, we will pay the usual and customary charge for reasonable and necessary expenses, incurred within three (3) years from the date of an accident, for medical and funeral services because of bodily injury:
1. sustained by an insured;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of a motor vehicle or trailer.

Any dispute as to the usual and customary charge will be resolved between the service provider and us.

**ADDITIONAL DEFINITIONS**

When used in this endorsement, whether in the singular, plural, or possessive:

1. "Insured" means:

    a. If the insured shown on the Declarations Page is a natural person:

\*\*\*

    (iv) any other person while occupying an insured vehicle, temporary substitute auto, or trailer while attached to an insured auto[.]

\*\*\*

**EXCLUSIONS – READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.**

\*\*\*

2. occurring during the course of employment if workers' compensation coverage should apply.

***

*Id.* at 18–19.

## B. The Accident

Shortly after Plaintiff issued the Policy, on July 18, 2018, Erick Eduardo Avila-Grado ("Decedent"), an employee of Roberg, was incinerated by an explosion at a Carlsbad, New Mexico tank farm ("Job Site") that Defendant WPX owned and operated.  Compl. ¶¶ 20–21, 28.

On the day of the accident, Defendant WPX hired several entities to perform various functions at the Job Site, including J & A Oilfield Services ("J & A") to oversee Job Site operations, Wadeco Specialties, Inc. ("Wadeco") to perform water purification services, and Pressure Services, LLC ("Pressure Services") to skim oil from the holding tanks.  *Id.*  ¶¶ 23–24.[5] In turn, on the day of the accident Pressure Services subcontracted with Golden Trucking, LLC ("Golden") to provide a vacuum truck, the commercial vehicle used to recapture/skim oil from the holding tanks.  *Id.* ¶ 25.[6]  However, due to a truck shortage, Golden subcontracted with Roberg to perform the skimming duties at the Job Site.  *Id.* ¶ 26.  Roberg then dispatched a vacuum truck with Decedent as its operator to the Job site.  *Id.* ¶ 29–30.

Once at the Job Site, Decedent began prepping individual tanks for the skimming process, which required that he leave Roberg's vacuum truck, manually open a tank's lid, and place a gauge line inside.  *Id.* ¶ 31. Just before the explosion, Decedent was on top of a tank and had just inserted an ungrounded gauge line inside.  *Id.*  Seconds after, a loud whistling noise was heard and the tank on which Decedent was standing exploded, killing him instantly.  *Id.*  The blast also severely

---

[5] J & A, Wadeco, and Pressure Services are not parties to this action.
[6] Golden is not a party to this action.

burned Defendant Patrick Smith ("Smith"), a J & A employee near the tank. *Id.* ¶ 34. Roberg did not have a workers' compensation policy in place on the date that Decedent died. *Id.* ¶ 29.

### *C.* **State Court Litigation**[7]

#### *1. Estate Defendants' Lawsuit*

On October 18, 2019, Estate Defendants filed a wrongful death action against Defendants WPX and Morales, as well as J & A, Wadeco, Pressure Services, and Golden. *Id.* ¶ 35. The operative complaint, Compl., Ex. C ("WDC Complaint"), asserts claims for wrongful death and loss of consortium and requests punitive damages. *Id.* ¶ 37–38. In sum, the WDC Complaint alleges that, on the day of the accident (1) Golden subcontracted with Roberg to complete the oil-skimming job at the Job Site; (2) Decedent was a truck driver for Roberg; (3) Decedent was "performing work related to tank-skimming operations, within the course and scope of his employment" with Roberg; and (4) Roberg did not have worker's compensation insurance. *See* WDC Compl. ¶¶ 18–21, 27–28, 38.

#### *2. Smith Lawsuit*

On April 8, 2020, Smith filed a state court complaint, Compl., Ex. B ("Smith Complaint"), asserting claims for (1) general negligence under theories of direct and vicarious liability against Defendant WPX, Pressure Services, Golden, and Roberg and (2) negligent hiring, training, and supervision against Pressure Services, Golden, and Roberg. Compl. ¶¶ 40–41.[8] Generally, the Smith Complaint parallels the fact allegations and damages requests (punitive damages) proffered in the WDC Complaint but several distinctions do exist. *See* Smith Compl., *passim*. Relevant

---

[7] The Court takes judicial notice of the state court records. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (explaining that the Court may take judicial notice of publicly filed records in this court and other courts concerning matters that bear directly upon the disposition of the case at hand); *Stack v. McCotter*, 79 F. App'x 383, 391 (10th Cir. 2003) (unpublished) (finding state district court's docket sheet is an official court record subject to judicial notice under Fed. R. Evid. 201).

[8] In December 2019, Smith unsuccessfully attempted to intervene in the Estate Defendants' wrongful death state court lawsuit.

here, the Smith Complaint alleges that, in addition to working for Roberg at the time of the explosion, Decedent was also in the course and scope of his employment with Golden and Pressure Services. *Id*. ¶ 18. The Smith Complaint also maintains that Decedent was intoxicated at the time of the accident. *Id*. ¶¶ 13, 20.

## II.   JURISDICTION

### A.  Legal Standard

Under the Declaratory Judgment Act, a federal district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. However, "[b]ecause of the Act's use of the word 'may,' the Supreme Court has held it confers upon courts the power, but not the duty, to hear claims for declaratory judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980 (10th Cir. 2012) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). Five factors determine whether the exercise of jurisdiction over a declaratory judgment suit is appropriate: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Mhoon*, 31 F.3d at 983.

**B. Analysis**

1. *Whether the declaratory action would settle the controversy and clarify legal relationships (Factors 1 and 2)*

   a. *Similarity between parties*

"The inquiry into whether the declaratory judgment settles a controversy and clarifies the legal relationships at issue is designed to shed light on the overall question of whether the controversy would be better settled in state court." *United States v. City of Las Cruces*, 289 F.3d 1170, 1187 (10th Cir. 2002) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). The "degree of similarity [between the state and federal proceedings] should be considered" in this inquiry. *Id*. at 1182.

On this front, Estate Defendants highlight that the "parties in the present action are similar to, but not identical with, the parties in the underlying state tort actions," specifically "a total of nine actors when all three actions are considered together; only five of those actors are named-parties in the present action." *Id*. According to Estate Defendants, "the less similarity between the parties, the less likely a federal declaratory judgment will settle the controversy between all interested parties or clarify the legal relations at issue." *Id*. at 9–10 (citing *City of Las Cruces*, 289 F.3d at 1183).

Plaintiff disagrees that the degree of identity between the parties requires dismissal of this proceeding. Plaintiff argues that, because it was not named as a party in the two New Mexico state court actions, those courts do not have the capacity to resolve the instant Policy dispute. Resp. 9 (citing *Mhoon*, 31 F.3d at 982–83). In fact, Plaintiff maintains that the two New Mexico state courts cannot resolve the coverage issues currently before this Court without reaching conflicting outcomes. Resp. 9. According to Plaintiff, the scope and extent of coverage under the Policy has not been pleaded nor addressed in the two state court actions and, therefore, if this Court declines

9

to exercise jurisdiction, Plaintiff "would be forced to file a separate state court lawsuit to address the coverage issue." *Id.*

The Court begins by rejecting Estate Defendants' request for dismissal because not all of the relevant parties are named in this action. In the Court's view, a no-coverage declaration will definitively settle all Policy disputes between the relevant parties. The fact that some entities—J & A, Pressure Services, Wadeco, and Golden—were scratched from this litigation's starting lineup does not and will not impact the Court's ability to do so. To be sure, only WPX, a named defendant in this litigation, has made a demand for a defense and indemnification under the Policy. But even if the absent entities were to make a similar demand, Plaintiff could move for leave to amend the Complaint to add them as defendants.[9] However, the Court is more concerned that Plaintiff was not named in the two New Mexico lawsuits and that the coverage issue is notably absent from their pleadings. There is clearly a "live need for a declaration of [Plaintiff's] rights and duties," regardless of whether all the parties from the underlying state court lawsuits are present in this action. *Mhoon*, 31 F.3d at 984. This especially holds true when the missing parties have not made a claim under the Policy.

      *b. Similarity between the issues[10]*

With that premilitary consideration resolved, the Court now turns to the main skirmish between the parties: Whether there are issues central to the two New Mexico state court proceedings that affect this Court's ability to declare rights under the Policy. Estate Defendants contend that, before a declaration can be made, the Employer's Liability Exclusion and the Medical Endorsement Exclusion require additional factual development by the New Mexico state courts

---

[9] The Court will not speculate about whether J & A, Pressure Services, Wadeco, and Golden will make a demand under the Policy nor about the role *res judicate* would play in enforcing a no-coverage declaration against them.

[10] The Court observes that this discussion may be better suited under a different *Mhoon* factor but includes it here to align with the parties' briefing.

because those exclusions depend on Decedent's employment status.  Mot. 9.  Specifically, Estate

Defendants argue that the underlying record demonstrates that a significant and undeveloped

factual issue exists "regarding the interplay and extent of [Decedent's] employment" with all

entities at the Job site.  Mot. 10.[11]  For example, Estate Defendants maintain that "a factual

determination [by either state court] that [Decedent] was employed by a company other than

Roberg would significantly impact [Plaintiff's] duty to defend or indemnify" under these two

exclusions.  *Id*.  Second, Estate Defendants contend that "affording [Plaintiff] its requested relief

would require this Court to conclusively determine that [Decedent] was Roberg's employee and

that his death arose out of and within the course of his employment or within the performance of

duties related to Roberg's business."  *Id*. at 11.  In Estate Defendants' view, this determination

must solely be made in state court.

Conversely, Plaintiff asserts that it is a "fallacy that the Court's consideration of the

exclusionary provisions of the Policy as presented in [Plaintiff's] complaint would be 'premature

because their application is dependent on factual determinations that are currently being

adjudicated in the pending state court actions.'"  Resp. 4 (quoting Mot. 10).  Plaintiff argues that,

based on the pleadings and the record, there is not "a current or even potential dispute in the

underlying state court actions that Decedent was an employee of [Defendant] Morales/Roberg and

was working in the course and scope of his employment for [Defendant] Morales/Roberg at the

time of the explosion."  *Id*. at 4.

Although Estate Defendants dedicate a majority of their briefing to convince the Court that

Decedent's employment status on the day of the accident is disputed and central to the two New

---

[11] Because Estate Defendants admit that the punitive damages exclusion, workers' compensation exclusion, fellow employee exclusion, and the operations exclusion do not require further factual development for this Court to examine their applicability, *see* Mot. 9, the Court will confine its analysis under *Mhoon* to only the Employer's Liability and Medical Endorsement exclusions.

Mexico state court cases, the record establishes otherwise. Essentially, Estate Defendants' argument on the record evidence is three-fold. First, they maintain that the Smith Complaint, which alleges that Decedent was an employee of Golden and Pressure Services in addition to Roberg, demonstrates that the employment issue is undeveloped and disputed. Mot. 10. Estate Defendants further argue that additional factual development of Decedent's employment is necessary because Defendant Morales asserted in her answers to both state court complaints that she "has insufficient information to admit or deny the allegations" made against her. *Id*. Third, Estate Defendants claim that Defendant Morales' written responses to their propounded interrogatories in the underlying wrongful death action support that she contests Decedent's employment status. *Id*.

The Court believes that Estate Defendants assign more weight to the proffered evidence than the record can bear. Contrary to Estate Defendants' assertions, all three complaints pleaded three common (and uncontested) facts: (1) Golden *hired Roberg* to perform the skimming duties, (2) Decedent *was employed by Roberg* on the date of the accident, and (3) Decedent *was* performing skimming duties at the time of the explosion. *See* Compl. ¶¶ 26–31; *see also id*., Ex. B ¶¶ (""Defendant Golden Trucking, LLC allowed a Defendant Roberg employee, [Decedent], to use one its trucks for the job")[12] (Decedent "attempted to start the process of skimming oil . . . causing an explosion"); *id*., Ex. C ¶¶ 27 ("Defendant Golden Trucking, LLC, subcontracted Roberg Trucking to Skim oil"), 28 (Decedent "was [Defendant Morales'] only employee"), 43–45 (Decedent on top of a tank inserting the gauge line when the tank exploded"). And Defendant Morales' inability to respond to these allegations in her state court responsive pleadings matter

---

[12] The Smith Complaint appears to allege that Golden owned the vacuum truck. *See* Smith Compl. ¶ 12. However, the Policy makes clear that Defendant Morales owned the truck. *See* Compl., Ex. A. Furthermore, if Golden truly did own the vacuum truck, this cause of action would be moot.

little when the subsequent record contains her admission that these three facts are indeed correct. *See, e.g.,* Mot., Ex. 1 (Doc. 7–2) (Q: "Was [Decedent], at any time, an employee" Defendant Morales: "[Decedent] was an employee of Roberg Trucking on the day of the incident"). Consequently, the Court fails to decipher ongoing fact disputes that Roberg employed Decedent on the day of the accident or that he was inserting a gauge line at the time of the explosion, i.e., performing duties related to Roberg's business.[13]   Because there is no cognizable dispute as to these fact issues, this Court does not need to abstain from declaring the parties rights under the two aforementioned Policy exclusions.[14]

In addition, even if Decedent's employment status needs further factual development, separate and distinct questions of law could resolve any discrepancies.   To illustrate, the Employer's Liability Exclusion bars from coverage bodily injury to "an employee of *any insured* arising out of or within the course of . . . that employee's employment by *any insured*; or . . . Performing duties related to the conduct of *any insured*."   Compl., Ex. A at 13 (emphasis added). Clearly, two elements are required for this exclusion to apply: (1) the bodily injury must occur to an employee of any insured and (2) that injury must arise out of the employee's employment or occur within the course of performing duties related to any insured's business.

---

[13] Estate Defendants also fail to explain how the two state courts could resolve these issues—if there are actual disputes—without reaching contradictory conclusions.  Moreover, even though Defendant Smith's motion to intervene in the wrongful death lawsuit and the corresponding state court order denying that request are not before this Court, the Court wonders whether the issue of employment was addressed or even considered.

[14] See *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 160 (N.M. Ct. App. 2007) (citing *Medina v. Fuller (Fuller )*, 971 P.2d 851, 856 (N.M. Ct. App. 1998) ("Generally, whether an employee is acting in the course and scope of employment is a question of fact.  However, if, from the facts presented, only one reasonable conclusion can be drawn, summary judgment is properly granted.  We see no reason why these same rules would not apply to the question of scope of duties." (internal quotations and citations omitted))).   Furthermore, the Smith Complaint's allegation that Decedent was intoxicated does not change this Court's decision.   First, there are no other facts to suggest a deviation from employment under a traditional course and scope test.  Second, as discussed throughout this section, there is a separate legal question, i.e., whether Decedent was *performing duties related to the business*, that would resolve any discrepancies.  Nonetheless, this alleged fact does not tip the scale in favor of dismissal when several other avenues exist for Plaintiff to receive a non-coverage declaration under the Policy.

Beginning with the first element, Estate Defendants argue that "a factual determination that [Decedent] was employed by another company other than Roberg would significantly impact [Plaintiff's] duty to defend or indemnify." Mot. 10. This argument, however, disregards a fair reading of the Policy and the potential interplay between the definition of "insured," which appears to expand the Policy's scope of coverage to other parties, i.e., potentially the other entities at the Job Site, and the Employer's Liability Exclusion. The plain language of the Policy likewise could relieve the need for further factual development regarding the second element. At the risk of stating the obvious, once it is established that the bodily injury occurred to an employee of any insured, the Employer's Liability Exclusion provides for *two avenues* to satisfy the second element: The injury can either arise "out of or within the course of . . . that employee's employment" or while the employee was "[p]erforming *duties related to* the conduct of *any insured's business*." Compl., Ex. A at 13 (emphases added).[15] Estate Defendants do not provide (and this Court cannot find any) New Mexico case law that indicates that "[p]erforming *duties related* to the conduct of *any insured's business*" is synonymous with "acting within the course and scope of employment." Rather, a plain reading infers that the former covers a much broader swath of conduct than the latter. *See Nautilus Ins. Co. v. Harvard Terrace LLC*, 2018 WL 5309797, at *13 (D. Mass. Aug. 8, 2018) (policy at issue included similar language that "broadens the exclusion to cover bodily injury that directly or indirectly occurs while the employee is performing duties related to the conduct of any insured's business."). These are discrete legal issues that are not before either state court.

In sum, there is no need for additional factual development in the underlying state court proceedings. Additionally, there are unresolved discrete legal issues that this Court can address

---

[15] This reasoning applies equally to the Fellow Employee provision.

that would negate the need for further factual development.  And while the Court takes no position on the merits of those legal issues at this juncture, it will not deprive Plaintiff of the opportunity to argue on summary judgment that, as a matter of law, it is entitled to a no-coverage declaration based on them.  *See Horace Mann Ins. Co. v. Johnson By & Through Johnson*, 953 F.2d 575, 579 (10th Cir. 1991) (quotation and citation omitted) ("Declaratory judgment actions are seen as useful in actions wherein insurance companies seek to have their liability declared.  We have expressly recognized that one of the primary functions of the [Federal Declaratory Judgment] Act is to provide the insuror [sic] such a forum.").  These two factors weigh in favor of this Court exercising jurisdiction.

2. *Whether a declaratory remedy is being used for procedural fencing*

This case was initiated after the state court litigation began and there are no pending cases involving the contractual issues currently presented in Plaintiff's Complaint.  Moreover, there is nothing before the Court that suggests Plaintiff is using this forum as an arena for a race to *res judicata*.  *Cf. St. Paul Fire & Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1170 (10th Cir. 1995) (procedural fencing factor weighed against court exercising discretionary jurisdiction when insurer filed federal case one day before it knew insured was filing state court action against insurer for identical issue).  This factor weighs in favor of exercising discretionary jurisdiction.

3. *Whether declaratory action would increase friction between state and federal courts and Whether there is an alternative, better remedy (Factors 4 and 5)*

As just discussed, the coverage and duty to defend issues are not before the two New Mexico state courts.  In addition, the Court has already explained above that it can resolve those disputes without encroaching on a factual question that either state court is likely to decide.  But even if this action might cause some friction, *see, e.g.*, *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to

15

proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."), any residual chafing is relieved by the fact that neither state court currently affords Plaintiff a better or more effective remedy than this declaratory judgment action.  Indeed, Plaintiff currently has no remedy or avenue for relief in the two New Mexico state court proceedings.  These two factors collectively weigh in favor of this Court exercising discretionary jurisdiction.

    *4.  Conclusion*

The Court scores the *Mhoon* factors in favor of exercising its discretionary jurisdiction. Plaintiff is not a party to either New Mexico state court proceeding but must defend both nonetheless until a coverage declaration can be made.  However, none of the coverage disputes— disputes that this Court can resolve without issuing a conflicting judgment—are before either New Mexico state court.  Consequently, the Court denies Estate Defendants' Motion as it relates to discretionary jurisdiction.

## III.   FAILURE TO STATE A CLAIM

Because the Court will exercise jurisdiction over this matter, it will now address the merits of Estate Defendants' tacked on request for dismissal under 12(b)(6).  Here, Estate Defendants assert that the "punitive damages provision, the workers' compensation exclusion, the fellow employee exclusion, and the operations exclusion are inapplicable as a matter of law and therefore dismissal is proper in these respects."  Mot. 15.  The Court will address each provision in turn.

### A.  Legal Standard

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  In doing so, courts

must "accept as true all well-pleaded factual allegations in a complaint and view [those] allegations in the light most favorable to the [non-moving party]."  *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  The allegations must "state a claim to relief that is plausible on its face." *Id*. (quoting *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).  "The claim is plausible only if it contains sufficient factual allegations to allow the court to reasonably infer liability."  *Moya v. Garcia*, 895 F.3d 1229, 1232 (10th Cir. 2018) (citing *Iqbal*, 556 U.S. 662, 678 (2009)).  The term "plausible" does not mean "likely to be true."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  The factual allegations must "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555—i.e., "that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).  A mere "formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

## B.  Analysis

### 1.  *Punitive Damages*

Although the Estate Defendants "do not contest that the [P]olicy expressly excludes coverage for punitive or exemplary damages," they move for dismissal nonetheless because the Complaint also "seeks non-punitive damages for bodily injuries against Roberg."  Mot. 15. Essentially, Estate Defendants argue that "a declaratory action to determine coverage on this issue is unnecessary."  Reply 9.

In response, Plaintiff does "not address [] Estate Defendants' argument" because they concede that the Policy excludes coverage for punitive damages.  Resp. 13.  Rather, Plaintiff

believes dismissal of this provision is premature and maintains that, "[i]n the event [Plaintiff] is determined to owe Morales/Roberg a duty to defend or indemnify, [Plaintiff] reserves the right to fully address that coverage for any punitive damages awarded to [] Estate Defendants are not covered" by the Policy.  *Id.*  The Court agrees.

Under rule 12(b)(6), the standard to survive dismissal is one of plausibility and not whether a party deems a legal declaration unnecessary.[16]  With that understanding, it is clear that the Complaint plausibly states a claim for relief on the punitive damage provision's application to the underlying state court lawsuits.  *See* Compl. ¶¶ 19 (Punitive Damages Provision); *see also id.*, Smith Compl. ¶ 59 (requesting punitive damages), WDC Compl. ¶ 66 (same).  The Court will deny the Motion on this provision.

2. *Workers' Compensation*

Next, the Policy excludes "[a]ny obligation for which an insured or an insurer of that insured, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability law, or any similar law." Compl. ¶ 19.  Estate Defendants believe that this exclusion is inapplicable because Defendant Morales did not have workers' compensation insurance at the time of the accident.  Mot. 16.  Estate Defendants further contend that Defendant Morales was not an employer under New Mexico's Workers' Compensation Act ("Act"), therefore this exclusion cannot apply as a matter of law.  Mot. 16 ("The Act provides that every private person or entity that employs three or more workers shall become liable . . ." (citing N.M. Stat. Ann. § 52-1-2)).  Lastly, Estate Defendants argue that in order for the Act to apply notwithstanding the three-employee rule, Defendant Morales needed to affirmatively avail herself of its provisions, which she did not do.  *Id.*

---

[16] If Estate Defendants believe that a declaration on this provision is unnecessary, they can stipulate to its application via the traditional avenues available to them.

Plaintiff counters that "[w]hether Morales/Roberg was required to, or did in fact, carry worker's compensation is of no consequence and does not invalidate the applicability of the exclusion."  Resp. 13 (citing *John Deere Ins. Co. v. Bachicha*, 1998 WL 36030436, at *1 (D.N.M. Aug. 26, 1998)).  Plaintiff believes that *Bachicha* stands for the proposition that an employer can decline (or not qualify for) workers' compensation insurance without invalidating the corresponding policy exclusion.  *Id*. at 14.

The Court begins its analysis with *Bachicha*, where the relevant inquiry asked: "does [a] general liability policy . . . apply to personal injury suits brought against [an employer] by an employee who was acting within the course of employment even if the employee is not covered through Workers' Compensation insurance?"  1998 WL 36030436, at *1.  The *Bachicha* policy excluded "any obligations which the insured may be liable for under any workers' compensation, disability benefits or unemployment compensation law . . . ."  *Id*. (internal quotations omitted). The policy also excluded bodily injury to "[a]n employee of the insured arising out of and in the course of employment by the insured."  *Id*. (internal quotations omitted).  Based on these two exclusions, the insured argued that the application of the *employee exclusion*, i.e., bodily injury to an employee of an insured, depended solely on the insured's obligation to obtain workers' compensation insurance.  *Id*., at *2.  In rejecting this argument, the court reasoned that the employee exclusion would "be redundant if this were so, for the injury would be excluded under the workers' compensation exclusion."  *Id*.  Thus, contrary to Plaintiff's reading, *Bachicha* does not control the instant analysis, which is whether the *workers' compensation exclusion* applies even if Defendant Morales did not have that insurance.  *Bachicha* stands only for the proposition that an *employee exclusion* applies even if an employer does not carry workers' compensation insurance.

However, the Court will not end its inquiry with *Bachicha*.  Even though the Court has not found a New Mexico case directly addressing the issue of whether a workers' compensation exclusion applies even when an insured is not legally required to obtain coverage, several other courts help inform the inquiry.  For example, in *Brown v. Indiana Ins. Co.*, 184 S.W.3d 528, 534 (Ky. 2005), the insured argued that a workers' compensation exclusion did not apply because the decedent employees' estates sought "tort damages, not workers' compensation benefits."  The court rejected the argument because the estates could

> claim compensation for death benefits under the Workers' Compensation Act *in addition* to filing an action in circuit court.  If the estates exercise their option to claim death benefits under the Workers' Compensation Act, [the employer] ultimately will be liable for any benefits paid.  Thus, the basis for this action in tort (the work-related deaths of [the employees]) is an obligation for which the [employer] may be held liable under any workers' compensation . . .  law, i.e., [the Kentucky Workers' Compensation Act], for workers' compensation benefits.  Moreover, [the employer] would be subject to any tort liability but for the authorization contained in [the Kentucky Workers' Compensation Act]; ergo, [the employer] may be held liable under any workers' compensation . . . law, i.e., [the Kentucky Workers' Compensation Act] for tort damages.

*Id.* at 534.  Therefore, the exclusion only applied because the tort action was a product of Kentucky's Workers' Compensation Act, i.e., born out of the plain language of the statute.  *Id.* at 535.

Other jurisdictions agree:  Unless an employer is under a legal obligation to obtain workers' compensation insurance or the governing statute authorizes separate common law causes of action, the exclusion does not bar coverage for tort liability.  *See Colony Ins. Co. v. Jackson,* 2010 WL 4117423, at *3 (N.D. Okla. Oct. 19, 2010) (exclusion does not apply if workers' compensation law does not apply); *Johnson v. Marciniak*, 231 F.Supp.2d 958, 959–60 (D.N.D.2002) (explaining that an employer/insured "should not be rewarded for failure to obey workers compensation law" and that the employee's tort action against the employer "was made possible only because of the

failure to obtain workers compensation insurance"); *see also Weger v. United Fire & Cas. Co.*, 796 P.2d 72, 74 (Colo. App. 1990) (exclusion applied when employee received an on-the-job injury, his employer *had not complied with the workers' compensation act*, and the employee brought a negligence action against the employer); *Liberty Mut. Ins. Co. v. United Nat. Ins. Co.*, 731 P.2d 167, 170 (Haw. 1987) (same); *Tri-State Const., Inc. v. Columbia Cas. Co./CNA*, 692 P.2d 899 (Wash. App. 1984) (same).[17]

With this guidance, the Court turns to the instant provision, which excludes from coverage "[a]ny obligation for which an insured or an insurer of that insured, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability law, or any similar law."  Compl., Ex. A at 13.  At first blush, according to the above persuasive authority, it appears that the exclusion does not apply.  To illustrate, at the time of the accident New Mexico imposed no legal obligation on Defendant Morales to obtain workers' compensation insurance because she (1) employed less than three individuals and (2) did not affirmatively avail herself of the Act.  However, unlike the above cases, the plain language of the Policy, i.e., "[a]ny obligation . . . *even if one does not exist*," can be read to eliminate the requirement that New Mexico impose a statutory obligation on the insurer.  Or put another way, the language appears to extend the exclusion to cover claims that workers' compensation insurance would cover, "even if [an obligation to obtain that insurance] does not exist.*"  Therefore, when viewing the facts in the light most favorable to Plaintiff, it is plausible that this provision can apply to the facts alleged in the Complaint.  Consequently, the Court will deny the Motion on this exclusion.

---

[17] Estate Defendants also cite *Progressive N. Ins. Co. v. Peavler*, 789 F. App'x 84, 89 (10th Cir. 2019) (unpublished), for the proposition that "Defendant Morales' decision not to elect coverage precludes any workers' compensation obligations."  Mot. 16.  However, *Peavler*, a case interpreting Oklahoma law, did not address the specific policy language at issue here, i.e., "*even if [an obligation] does not exist*."

21

3.  *Fellow Employee*

The Policy further excludes from coverage bodily injury to "a fellow employee of an insured injured while within the course of their employment or while performing duties related to the conduct of your business." Compl., Ex. A at 14.  Estate Defendants contend here that, "[u]nder the usual and ordinary meaning of the phrase, a fellow employee is one who is employed by another that is not an executive level position and is employed similarly to another employee of the same level of rank or power." Mot. 17 (relying on Merriam Webster's Dictionary).  Estate Defendants maintain that, [b]ecause [Defendant] Morales was Roberg's sole proprietor and [Decedent] was her only employee, it cannot be said that [Defendant] Morales and [Decedent] were fellow employees." (citing *Carroll v. Castillo*, 2000 WL 34592617, at *5 (Tex. App. [Corpus Christi-Edinburg] Apr. 6, 2000)).

Plaintiff challenges only Estate Defendants' representation that Decedent was Defendant Morales' *sole* employee. Resp. 15.  However, Plaintiff does not offer nor advance any substantive argument on this exclusion's application to the facts as alleged in the Complaint. *See id*.  The Court will grant the Motion on this exclusion.

The Complaint alleges that Plaintiff issued the Policy to "Diana Morales d/b/a/, and sole proprietor of, Roberg Trucking, for the period from June 27, 2018 to June 27, 2019." Compl. ¶ 16.  The Complaint further asserts that Decedent "was an employee of Roberg Trucking on July 18, 2018." *Id*. ¶ 28.  It follows then, that, this exclusion cannot apply as a matter of law[18] because it is not plausible that Defendant Morales was a fellow employee of Decedent while simultaneously being his employer. *See Estate of Sodorff v. United S. Assur. Co.*, 980 F. Supp. 1004, 1009 (W.D. Ark. 1997) (employer and employee cannot be considered fellow employees of

---

[18] This appears to be an issue of first impression under New Mexico law.

one another for purposes of exclusion); *see also Carroll*, 2000 WL 34592617, at *5 ("Carroll was either an employer or a contractor that hired Castillo to perform work for him. Carroll was doing business in the capacity of Carroll Well Services. Carroll was not a 'fellow employee' of Castillo to meet the exclusion of the policy.").

But even more specific to this situation, there are no fact assertions that make it plausible that Defendant Morales, a sole proprietor who hired Decedent as her employee, could be considered a dual status individual under the Policy or New Mexico law, i.e., a statutory employee. *See, e.g., Junge v. John D. Morgan Const. Co.*, 882 P.2d 48, 55 (N.M. Ct. App. 1994) ("Generally, sole proprietors and partners are not considered workers of their own companies or businesses unless an election to be so considered is made." (citing cases)) (discussing sole proprietors under New Mexico's Workers' Compensation Act).  Simply put, the Policy does not define "fellow employee" and the fact allegations do not plausibly establish that this term encompasses Defendant Morales.  The Court will grant the Motion on this exclusion.

*4. Operations Exclusion*

Under this provision, the Policy excludes from coverage bodily injury and property damage arising out of the operation of any equipment as defined by "[p]aragraphs b and c of the definition of auto" or "machinery or equipment . . . that would qualify under the definition of mobile equipment if it were not subject to a compulsory or financial responsibility law where it is licensed or principally garaged."  Paragraph (b) and (c) of the definition of "auto" include self-propelled vehicles with the following permanently attached equipment: "cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers" and "air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment."  Mobile equipment, in relevant part, focuses on vehicles

that are primarily used to provide mobility to permanently attached equipment. *See generally* Compl., Ex. A at 8.

Estate Defendants first argue that this exclusion does not apply because the vacuum truck is not enumerated under subparagraphs (b) or (c) of the definition of "auto."  Specifically, Estate Defendants assert that the vacuum truck "is a combination of a truck and trailer that has a hose connected to it.  Perhaps the closest item in the list is well-servicing equipment, but the vacuum truck was being used to service a tank, not a well."  Mot. 18–19.  Regarding the applicability of the definition of "mobile equipment," Estate Defendants argue in total: "[Estate] Defendants presume the machinery or equipment referred to by [Plaintiff] for its purported exclusion is the hose that connects from the tank to the truck and that was heard just before the explosion occurred.  The hose is not self-propelled and the hose itself would not qualify as mobile equipment."

Plaintiff disagrees with Estate Defendants' assessment of the Operations Exclusion.  Plaintiff believes that this exclusion requires further factual development—development that does not sufficiently overlap with any issues presented in the state court proceedings—before the Court can issue a coverage declaration.  The Court agrees.

The Complaint makes clear that the vacuum truck was used to skim oil from large tanks.  Therefore, it is plausible that the vacuum truck's mechanics are more than a mere hose attached to a vehicle.  Specifically, it is plausible that the vacuum truck falls under the definitions of "auto" or "mobile equipment" as defined by the Policy.  For instance, the vacuum truck most likely utilizes a pump to pneumatically extract oil from holding tanks.  Also, the vacuum truck likely needs its own holding tank to store the skimmed material.  Consequently, without further factual development and more thorough briefing on the issue, the Court cannot conclude that Plaintiff fails to state a claim under the Operations Exclusion.  Rather, the Court can only conclude that it is

plausible that the vacuum truck meets the Policy definitions of either "auto" or "mobile equipment." The Court will deny the Motion on this provision.

## IV.     REQUEST FOR STAY OF THE PROCEEDINGS[19]

As the Court mentioned earlier in the opinion, Estate Defendants seek a stay until "a full and fair adjudication and development of the facts in the underlying state case[s]." Mot. 19. But in their alternative request for a stay, Estate Defendants advance an additional and separate fact-based argument regarding whether Decedent was "occupying" the vacuum truck, as that term is defined under the Policy. Here, Estate Defendants assert that, specific to the Medical Endorsement section of the Policy, factual development is necessary "to determine [Decedent's] proximity and use of the hose at the time of explosion before the Court can affirmatively declare that coverage and a duty to defend do not exist." *Id.* This argument is unpersuasive. Estate Defendants fail to establish how any factual development on this issue would be relevant to the two New Mexico state court plaintiffs' theories of liability. Indeed, the issues central to the theories advanced in those cases appear to revolve around whether Decedent began skimming the tank prematurely, whether other entities negligently allowed him to do so, and whether he was properly trained for the job. Furthermore, based on the record before this Court, there is no dispute over Decedent's location (top of a tank) or the duties that he was performing (inserting an ungrounded gauge line and turning on the vacuum) at the time of the explosion. The Court will deny Estate Defendant's request for a stay of the proceedings.

---

[19] To be clear, Estate Defendants request a stay of all proceedings because they believe that *two* of the six exclusions need further factual development. Although the Court will not stay the proceedings at all, if it did, it would only be to those two provisions.

**V.     CONCLUSION**

IT IS ORDERED THAT

1.  Estate Defendants' Motion to Dismiss under *State Farm Fire & Cas. Co. v. Mhoon*, 31

    F.3d 979 (10th Cir. 1994) is DENIED;

2.  Estate Defendants' Motion to Dismiss the Punitive Damages Exclusion is DENIED;

3.  Estate Defendants' Motion to Dismiss the Workers' Compensation Exclusion is DENIED;

4.  Estate Defendants' Motion to Dismiss the Fellow Employee Exclusion is GRANTED;

5.  Estate Defendants' Motion to Dismiss the Operations Exclusion is DENIED; and

6.  Estate Defendants' Motion to Stay is DENIED.


SENIOR UNITED STATES DISTRICT JUDGE