**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED FINANCIAL CASUALTY COMPANY,

    Plaintiff,

v.                                                                     No. CIV 20-0867 RB/CG

DIANA MORALES d/b/a ROBERG TRUCKING,
TODD M. LOPEZ, as Personal Representative of the
Estate of ERICK EDUARDO AVILA-GRADO,
Decedent, YULMA FERNANDEZ-RENTERIA, as Next
Friend of ERICK ADRIAN AVILA-FERNANDEZ, DILAN
STEEVEN AVILA-FERNANDEZ and YAHIR EDUARDO
AVILA-FERNANDEZ, minor children, MARIA
GUADALUPE GRADO-SANCHEZ, PATRICK SMITH,
and WPX ENERGY PERMIAN, LLC,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    Plaintiff United Financial Casualty Company (UFCC) issued a New Mexico Commercial Auto Policy to Defendant Diana Morales d/b/a Roberg Trucking (Roberg Trucking). On July 18, 2018, Roberg Trucking was hired to send a truck to skim oil from water tanks at WPX Energy Permian, LLC's Saltwater Disposal Facility (SWDF). Roberg Trucking sent employee Erick Avila-Grado to the SWDF. Avila-Grado drove a truck with an attached trailer, both of which were covered by the Policy. At the job site, Avila-Grado exited the truck and trailer, went onto a catwalk, and placed a gauge line into a water tank. Because Avila-Grado failed to ground the gauge line, an explosion occurred, killing Avila-Grado and injuring Defendant Patrick Smith.

    Several of the defendants named in this case have filed two lawsuits against Roberg Trucking and others in state court. UFCC is defending Roberg Trucking under a reservation of rights in both lawsuits. UFCC filed a declaratory judgment action in this Court and seeks a

determination of whether the Policy obligates it to defend or indemnify Roberg Trucking.

Before the Court are two motions. First, UFCC moves for default judgement on the issue of whether it has a duty to defend Roberg Trucking, which has failed to enter an appearance or answer the Complaint in this lawsuit. The Court finds that UFCC fails to allege facts sufficient to show that it has no duty to defend Roberg Trucking and will deny the motion for default judgment. Second, UFCC moves for summary judgment on the issue of whether the accident is excluded from coverage under the "Operations Exclusion." Smith opposes the motion. The Court finds that under the facts alleged in the state court complaint and the parties' original briefing on this issue, UFCC has not established that the accident is precluded by the Operations Exclusion and will deny the motion for summary judgment.

**I.     Factual Background**

On July 18, 2018, Roberg Trucking had been contracted to skim oil from water tanks at the SWDF. (Doc. 74-C at 3.) The SWDF site includes, in relevant part, a well and eight waste water tanks. (*See id.* at 6.) "The well at the site produces a mixture of waste water and oil which accumulates in the [eight] waste water tanks." (*Id.*) To skim the oil, a vacuum truck driver uses a gauge line to measure how much oil to skim from the waste water tank, then uses a vacuum truck to suck the oil from the tank. (*See, e.g.*, Doc. 84 at 2 (citing Doc. 84-A at 5, 7[1]).)

Avila-Grado, Roberg Trucking's employee, drove a truck and attached tanker[2] to the

---

[1] UFCC disputes several of Smith's factual assertions as "irrelevant" to the issue of coverage. (*See* Doc. 87 at 3–4.) For the most part, though, Smith pulls facts from the same Fatality Investigation that UFCC attached to its motion. (*See* Docs. 74-C; 84-A.) Moreover, UFCC does not submit evidence to dispute the facts, and the Court finds the information helpful as background.

[2] The Policy covered two vehicles: a "2007 Intl 941" and a "2019 Intermit Trailer." (Doc. 1-A at 3.) According to evidence submitted with UFCC's motion, Avila-Grado drove a "2009 International truck" on the day of the accident. (*See* Doc. 74-B at 2.) The parties do not dispute that the Policy covers the truck and trailer Avila-Grado operated on July 18, 2018.

SWDF to skim oil from the tanks. (*See* Doc. 74-C at 3, 6.) Avila-Grado exited his truck and walked onto a catwalk adjacent to a water tank. (*See, e.g.*, *id.* at 1, 8.) He opened the tank and put a gauge line into it, but contrary to required procedure, he failed to ground the gauge line. (*See id.* at 1, 4, 8, 13.) Other workers on site at the time confirmed that Avila-Grado did not ground the gauge line. One worker said, "I never saw the gauge line the truck driver was using being grounded. It would have been easy to tell if the gauge was grounded, it has a long line (grounding wire) coming from it." (*Id.* at 8; *see also id.* at 12 ("the grounding line was hanging from the gauge line not attached (unbonded) to anything.").) Avila-Grado's truck, though, *was* grounded. (*See id.* at 13, 18.)

When Avila-Grado placed the ungrounded gauge line into the water tank, workers heard a whistling noise, and then the tank exploded. (*See id.* at 13.) "After the first tank exploded, the other seven tanks began to explode in sequence." (*Id.*) Avila-Grado was killed in the explosion, and Smith was severely injured. (*Id.* at 8–9, 13–14.) "The only equipment involved in the Accident was a gauge line and the SWDF's water tank."[3] (Doc. 74 at 7.) It is unclear from the state court complaint or from the parties' original summary judgment briefs, however, whether the gauge line was attached or connected to the truck or trailer. UFCC insured Roberg Trucking under a Commercial Auto Policy that was in effect on the date of the accident. (*See* Docs. 1-A; 74-C at 3.) The relevant portions of the Policy include:

**GENERAL DEFINITIONS**

. . .

1. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage.

2. "**Auto**" means a land or motor vehicle or trailer designed for travel on public

---

[3] The parties spent some time discussing what equipment was involved in the accident, and the Court ordered supplemental briefing on the issue. (*See* Docs. 74 at 7; 84 at 2; 92.) As explained below, however, the Court will limit its analysis to the facts contained within the state court complaint and the parties' original briefs.

      roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include mobile equipment. Self-propelled vehicles with the following types of permanently attached equipment are autos, not mobile equipment:

. . .

      c.      air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

. . .

8.      "**Mobile equipment**" means any of the following types of land vehicle including, but not limited to, any attached machinery or equipment:

. . .

      f.      Vehicles not described in Paragraphs a., b., c., or d. above that are self-propelled and used primarily for purposes other than transportation of persons or cargo.
However, mobile equipment does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or provides where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle law are considered autos.

9.      "**Occupying**" means in, on, entering or exiting.

. . .

15.      "**Trailer**" includes a semi trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

. . .

## PARI I – LIABILITY TO OTHERS

**INSURING AGREEMENT – LIABILITY TO OTHERS**

Subject to the Limits of Liability, if you pay the premium for liability coverage for the insured auto involved, we will pay damages, other than punitive or exemplary damages, for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto. . . .

We will settle or defend, at our option, any claim or lawsuit for damages covered by this Part I. . . .

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**[4]

. . .

B. When used in PART I – LIABILITY TO OTHERS, insured auto also includes:

1. **Trailers**, designed primarily for travel on public roads, while connected to your insured auto that is a power unit;

2. **Mobile equipment** while being carried or towed by an insured auto;

. . .

4. Any **mobile equipment** owned by you, or if you have purchased Hired Auto or Non-owned Auto coverage, leased or hired by you, when subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. This does not change the effect of exclusion 13 concerning the operation of mobile equipment.

**EXCLUSIONS** – PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I – LIABILITY TO OTHERS.

Coverage under this Part I, including our duty to defend, does not apply to:
. . .

13. **Operations**
    **Bodily Injury, property damage, or covered pollution cost or expense** arising out of the operation of:
    a. any equipment listed in Paragraphs b. and c. of the definition of auto; or
    b. machinery or equipment that is on, attached to, or part of, a land vehicle that would qualify under the definition of mobile equipment if it were not subject to a compulsory or financial responsibility law where it is licensed or principally garaged.

. . .

(Docs. 1-A at 6, 8–11 (some bolding omitted); 74-A.)

Smith filed suit to recover for personal injuries against Roberg Trucking and others in state

---

[4] Paragraph B was amended by Form Z228 (01/11), which UFCC submitted as Exhibit A to its motion. (*See* Docs. 74 at 6 n.5; 74-A.)

5

court on April 8, 2020. (*See* Doc. 1-B.) Other Defendants filed a wrongful death suit against Roberg Trucking and others in state court on November 1, 2019. (*See* Doc. 1-C.) "UFCC is defending Roberg Trucking under a reservation of rights" in both suits.[5] (Doc. 1 (Compl.) ¶ 46.)

## II.     Legal Standards

Summary judgment is appropriate when the Court determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted). The Court examines the record and makes all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016).

The Court applies New Mexico substantive law in this diversity case. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Where no controlling state decision exists, the Court ascertains and applies New Mexico law and predicts what the New Mexico Supreme Court would do if faced with the specific issues. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).

## III.    Genuine issues of fact remain regarding whether the Operations Exclusion precludes coverage.

In its motion for summary judgment, UFCC argues that coverage for the accident is excluded under the Policy's Operations Exclusion clause. (Doc. 74 at 9–12.) This clause provides that "coverage . . . does not apply to: [b]odily injury . . . arising out of the operation of . . . machinery or equipment that is **on, attached to, or part of**, a land vehicle that would qualify under the

---

[5] The parties have settled the 2019 lawsuit. *See Lopez v. WPX Energy Prod., LLC*, D-101-CV-2019-02677 (1st Jud. Dist. N.M.).

6

definition of mobile equipment if it were not subject to a compulsory or financial responsibility law where it is licensed or principally garaged." (Doc. 1-A at 13, 15 (emphasis added).) The Policy defines "mobile equipment" as vehicles "that are **self-propelled** and used primarily for purposes other than transportation of people or cargo." (*Id.* at 9 (emphasis added).) Yet, in their original briefs, the parties submitted no evidence to show whether the gauge line Avila-Grado used was "on, attached to, or part of" the insured vehicles or whether the tanker was "self-propelled and used primarily for purposes other than transportation of people or cargo." Because UFCC has not provided evidentiary support for its theory that coverage is precluded under the Operations Exclusion, the Court will deny its motion for summary judgment.[6] *See, e.g., Evanston Ins. Co. v. Desert State Life Mgmt.*, 484 F. Supp. 3d 987, 1029 (D.N.M. 2020) (noting that insurer "bears the burden of proving the policy excludes coverage" (citing *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111, 1113 (N.M. 2006)).

**IV.    UFCC is not entitled to default judgment on the issue of whether it has a duty to defend Roberg Trucking.**

UFCC seeks default judgment against Morales d/b/a Roberg Trucking on the issue of

---

[6] The Court is reluctant to determine UFCC's duty to indemnify based on facts developed in this collateral proceeding. *See Valley Imp. Ass'n, Inc. v. U.S. Fidelity & Guar. Corp.*, 129 F.3d 1108, 1126 (10th Cir. 1997). The Tenth Circuit has found that "the duty to indemnify must be determined based on the facts as ultimately determined in the litigation against the insured." *Id.*; *see also Union Ins. Co. v. Bandido Hideout, Inc.*, No. 11-CV-351 MCA/LFG, 2012 WL 13076230, at *5 (D.N.M. Sept. 28, 2012) (noting that the court may "only consider the complaint and whether 'the alleged facts tend to show an occurrence within the coverage,' even if 'the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy'" (quoting *Found. Rsrv. Ins. Co. v. Mullenix*, 642 P.2d 604, 605–06 (N.M. 1982)). An insurer cannot bring a collateral action to "establish actual facts either contrary to or not alleged in the complaint, thereby relieving [the insurer] from a duty either to defend or to pay under the terms of the policy as a matter of law." *Union Ins. Co.*, 2012 WL 13076230, at *5 (quoting *Mullenix*, 642 P.2d at 606). The Tenth Circuit has also opined that it would be "premature to determine that the insurer [is] not liable to indemnify the insured . . . because to do so 'ignores the possibility, even though it may be highly improbable, that a claim may ultimately be established . . . within the coverage of the policy.'" *Valley Imp. Ass'n*, 129 F.3d at 1126 (quotation omitted). Should UFCC file another motion for summary judgment, the Court directs it to address these concerns.

Should UFCC wish to file another motion for summary judgment so that the parties may more thoroughly explore the issue of coverage given the parties' supplemental briefing (*see* Docs. 96; 98–99), UFCC may do so no later **than March 31, 2022**.

whether it has a duty to defend Roberg Trucking in the state court lawsuits. (Doc. 73.) Morales has been served with the Summons and Complaint but has failed to enter an appearance or answer the Complaint. (*See* Doc. 67.) UFCC moved for default judgment and the Clerk filed an Entry of Default on August 3, 2021. (*See* Docs. 73; 75.)

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332 because (1) UFCC, a foreign corporation incorporated in Ohio, is diverse from Morales d/b/a Roberg Trucking, who is a resident of New Mexico; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. (*See* Compl. ¶¶ 1–2, 9–10.) The Court has personal jurisdiction over Morales d/b/a Roberg Trucking because Morales was personally served in Texas on May 5, 2021, pursuant to Federal Rule of Civil Procedure 4.[7] (*See* Doc. 67.)

The Court must next determine whether UFCC has stated a claim for declaratory relief. *See Bixler v. Forester*, 596 F.3d 751, 762 (10th Cir. 2010). "[A] defendant's default does not in itself warrant the court in entering a default judgment." *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "Once default is entered, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Id.* (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane,

---

[7] Under Texas law, "the citation must be served by: (1) delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition . . . ." Tex. R. Civ. P. 106(a)(1). Here, the certified process server declared that she personally served on Morales a copy of the summons and complaint at an address in Fort Worth, Texas. (*See* Doc. 67.)

Federal Practice and Procedure § 2688, at 63 (3d ed. 1998)) (citing *Nishimatsu Constr. Co.*, 515 F.2d at 1206–08 (vacating district court's entry of default judgment because the pleadings were insufficient to support the judgment)). "There must be a sufficient basis in the pleadings for the judgment entered." *Id.* (quoting *Nishimatsu Constr. Co.*, 515 F.2d at 1206).

UFCC seeks a declaration that it does not have a duty to defend Roberg Trucking. UFCC's "duty to defend is to be determined by the allegations of the complaint against its insured and the facts actually known to [UFCC] at the time of demand." *See Valley Imp. Ass'n, Inc. v. U.S. Fidelity & Guar. Corp.*, 129 F.3d 1108, 1117 (citing *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1116 (N.M. 1990)). "If a complaint 'states facts that bring the case within the coverage of the policy,' then the duty to defend will be triggered." *Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, 864 F. Supp. 2d 1157, 1193 (D.N.M. 2012), *on reconsideration in part*, 981 F. Supp. 2d 981 (D.N.M. 2013) (quoting *Bernalillo Cnty. Deputy Sheriffs Ass'n v. Cnty. of Bernalillo*, 845 P.2d 789, 791 (N.M. 1992)). "The insurer must also fulfill its promise to defend even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage." *Transamerica Ins. Grp. v. Hinkle-Keeran Grp., Inc.*, 53 F.3d 343, at *3 (10th Cir. 1995) (quoting *Found. Rsrv. Ins. Co. v. Mullenix*, 642 P.2d 604, 619–20 (N.M. 1982)).

In *Cincinnati Specialty Underwriters Ins. Co. v. Albuquerque Navajo Lodge 863 I.B.P.O.E. of W.*, the insurer brought a declaratory judgment action to determine whether it had a duty to defend or indemnify Navajo Lodge in state lawsuits brought by third parties "for damages relating to injuries sustained at the Navajo Lodge" when someone fired a gun on the premises. Civ. No. 15-572 KG/WPL, 2015 WL 13540671, at *1 (D.N.M. Nov. 23, 2015). Navajo Lodge failed to file

9

a responsive pleading, and the insurer moved for default judgment. *See id.* The insurer argued that "it ha[d] no duty to indemnify or defend Navajo Lodge against [the] claims because the Policy contains exclusions for coverage of claims that arise from a firearm or ammunition and claims derived from an assault or battery." *Id.* The court agreed. The state court complaint alleged only that the plaintiffs were struck by gunfire "while they were walking toward the entrance of the Navajo Lodge." *Id.* The federal court complaint recited the policy provisions that excluded coverage for bodily injuries caused by weapons, assault, or battery. *Id.* at *2–3. The court noted that other "[c]ourts have found that similar [firearms and assault or battery] provisions preclude coverage where applicable and do not require indemnification from the insurance company." *Id.* at *3 (gathering cases). Because "the language of the firearms or ammunition and assault or battery exclusions unambiguously preclude coverage for injuries arising out of a shooting incident at Navajo Lodge[,]" the Court found that the insurer was entitled to default judgment. *Id.*

The facts here are not as clear cut. Smith's state court complaint alleges that Roberg Trucking was subcontracted "to send a vacuum truck to [the SWDF] . . . to skim oil off of the tanks . . . ." (Doc. 1-B at 2.) Roberg Trucking sent Avila-Grado in "one of its trucks for the job." (*Id.* at 3.) "[Avila-]Grado attempted to start the process of skimming oil and gauging the tank without grounding his gauge line causing an explosion . . . ." (Doc. 1-B at 3.) UFCC summarily asserts that "[t]he well-pled allegations in UFCC's Complaint for Declaratory Judgment [for] Relief establish that it is entitled to relief and that there is no duty to defend Roberg under the UFCC Policy in the Smith Lawsuit." (Doc. 82 at 3.) The Court disagrees. UFCC's complaint sets forth the Policy provisions it asserts are relevant along with a recitation of the facts as alleged in the state court complaint. (*See* Compl. ¶¶ 16–45.) UFCC then asserts that the damages Smith seeks "are excluded by the Policy's 'Operations' Exclusion." (*Id.* ¶ 53.) This assertion, however, is a legal conclusion;

10

it is not a factual assertion that the Court must accept as true for purposes of UFCC's motion for default judgment. As explained above, UFCC has not alleged facts to establish that the accident clearly fell within the Operations Exclusion. Without supporting facts, the Court may not accept UFCC's conclusion—that the Operations Exclusion applies—as true. *See Innovative Sports Mgmt., Inc. v. Castillo*, No. 19-CV-01596-REB-NYW, 2020 WL 12584442, at *2 (D. Colo. Apr. 30, 2020), R&R adopted, No. 19-CV-01596-REB-NYW, 2020 WL 12584445 (D. Colo. July 27, 2020) ("a party in default does not admit conclusions of law, only allegations of fact, and so those allegations must be sufficient to establish substantive liability" (citing *Bixler*, 596 F.3d at 762) (subsequent citation omitted). Accordingly, there is not "a sufficient basis in the pleadings for" default judgment, and the Court will deny UFCC's motion.

**THEREFORE**,

**IT IS ORDERED** that UFCC's Second Motion for Default Judgment against Defendant Diana Morales d/b/a/ Roberg Trucking (Doc. 73) is **DENIED**;

**IT IS FURTHER ORDERED** that UFCC's Motion for Summary Judgment for Declaratory Judgment Relief Against Defendant Patrick Smith (Doc. 74) and Supplemental Brief (Doc. 99) are **DENIED** on the basis that UFCC has not shown that the accident is excluded under the Operations Exclusion.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE