IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED FINANCIAL CASUALTY COMPANY,

      Plaintiff,

v.                                                                                                                                  No. CIV 20-0867 RB/CG

DIANA MORALES d/b/a ROBERG TRUCKING,
TODD M. LOPEZ, as Personal Representative of the
Estate of ERICK EDUARDO AVILA-GRADO,
Decedent, YULMA FERNANDEZ-RENTERIA, as Next
Friend of ERICK ADRIAN AVILA-FERNANDEZ, DILAN
STEEVEN AVILA-FERNANDEZ and YAHIR EDUARDO
AVILA-FERNANDEZ, minor children, MARIA
GUADALUPE GRADO-SANCHEZ, PATRICK SMITH,
and WPX ENERGY PERMIAN, LLC,

      Defendants.

## **MEMORANDUM OPINION AND ORDER**

Plaintiff United Financial Casualty Company (UFCC) issued a New Mexico Commercial Auto Policy to Defendant Diana Morales d/b/a Roberg Trucking (Morales or Roberg Trucking). On July 18, 2018, Roberg Trucking was hired to send a truck to skim oil from water tanks at WPX Energy Permian, LLC's Saltwater Disposal Facility (SWDF). Roberg Trucking sent employee Erick Avila-Grado to the SWDF. Avila-Grado drove a truck with an attached trailer, both of which were covered by the Policy. At the job site, Avila-Grado exited the truck and trailer, went onto a catwalk, and placed a gauge line into a water tank. The gauge line was not attached to the truck or trailer. Because Avila-Grado failed to ground the gauge line, an explosion occurred, killing Avila-Grado and injuring Defendant Patrick Smith.

Relevant here, Smith filed a lawsuit against Roberg Trucking and others in state court. UFCC is defending Roberg Trucking under a reservation of rights and filed a declaratory judgment

action in this Court seeking a determination of whether the Policy obligates it to defend or indemnify Roberg Trucking. UFCC previously moved for summary judgment on the basis that the accident was excluded from coverage under the Policy's "Operations Exclusion." The Court denied the motion, because UFCC failed to meet its burden to show that the exclusion applied.

UFCC now moves for summary judgment a second time and argues that because Smith has stipulated that the gauge line was not attached to the truck or trailer, the accident did not arise out of the ownership, maintenance or use of the insured autos and, therefore, coverage is excluded. Smith disagrees and argues that Avila-Grado's use of the gauge line was a foreseeable use of the insured vehicle and thus the accident falls within the Policy. Having considered the parties' arguments and relevant law, the Court finds that the accident did not arise out of the use of the insured autos, and thus coverage is excluded. UFCC's motion for summary judgment will be granted.

UFCC also moves for default judgment against Morales, who has not entered an appearance or answered this lawsuit. The Court will grant default to UFCC.

I. **Factual Background**

On July 18, 2018, Roberg Trucking had been contracted to skim oil from water tanks at the SWDF. (Doc. 84-A at 2.) The SWDF site includes, in relevant part, a well and eight waste water tanks. (*Id.* at 5.) "The well at the site produces a mixture of waste water and oil which accumulates in the [eight] waste water tanks." (*Id.*) "This mixture of water and oil creates pads (waste oil and mold) which" must be periodically removed by a process called skimming. (*Id.*) "The oil which accumulates on top of the water is skimmed off by vacuum trucks such as the one used by Roberg Trucking." (*Id.*) The parties agree that before a vacuum truck driver can skim off the oil, s/he must use a gauge line to measure how much oil needs to be skimmed. (*See* Docs. 102 at 8; 105 at 6.)

2

Avila-Grado, Roberg Trucking's employee, drove a truck and attached tanker[1] to the SWDF to skim oil from the tanks. (*See* Doc. 84-A at 2, 5.) Avila-Grado exited his truck and walked onto a catwalk adjacent to a water tank. (*See, e.g.*, *id.* at 2, 7.) He opened the tank and inserted a gauge line. (*Id.* at 3, 7.) "The gauge line was not attached to the tanker trailer or the truck." (Doc. 97 at 2.) Contrary to required procedure, Avila-Grado failed to ground the gauge line. (*See* Doc. 84-A at 3, 7; *see also* Doc. 74-C at 1, 13.) Other workers on site at the time confirmed that Avila-Grado did not ground the gauge line. One worker said, "I never saw the gauge line the truck driver was using being grounded. It would have been easy to tell if the gauge was grounded, it has a long line (grounding wire) coming from it."[2] (Doc. 84-A at 7; *see also* Doc. 74-C at 12 ("the grounding line was hanging from the gauge line not attached (unbonded) to anything.").) When Avila-Grado placed the ungrounded gauge line into the water tank, workers heard a whistling noise, and then the tank exploded. (*See* Doc. 74-C at 13.) "After the first tank exploded, the other seven tanks began to explode in sequence." (*Id.*) Avila-Grado was killed in the explosion, and Smith was severely injured. (*Id.* at 8–9, 13–14.)

UFCC insured Roberg Trucking under a Commercial Auto Policy that was in effect on the date of the accident. (*See* Docs. 1-A.) The relevant portions of the Policy include:

**GENERAL DEFINITIONS**

. . .

1. "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes bodily injury or property damage.

---

[1] The Policy covered two vehicles: a "2007 Intl 941" and a "2019 Intermit Trailer." (Doc. 1-A at 3.) According to evidence submitted with UFCC's first motion, Avila-Grado drove a "2009 International truck" on the day of the accident. (*See* Doc. 74-B at 2.) The parties do not dispute that the Policy covers the truck and trailer Avila-Grado operated on July 18, 2018.

[2] Avila-Grado's truck, though, was grounded. (*See* Doc. 74-C at 13, 18.)

> 2. "**Auto**" means a land or motor vehicle or trailer designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include mobile equipment. Self-propelled vehicles with the following types of permanently attached equipment are autos, not mobile equipment:
>
> . . .
>
>   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.
>
> . . .
>
> 15. "**Trailer**" includes a semi trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.
>
> . . .
>
> 
>
> **PARI I – LIABILITY TO OTHERS**
>
> **INSURING AGREEMENT – LIABILITY TO OTHERS**
>
> 
>
> Subject to the Limits of Liability, if you pay the premium for liability coverage for the insured auto involved, we will pay damages, other than punitive or exemplary damages, for bodily injury, property damage, and covered pollution cost or expense, for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto. . . .
>
> We will settle or defend, at our option, any claim or lawsuit for damages covered by this Part I. . . .

(Docs. 1-A at 6, 9–10 (some bolding omitted).)

Smith filed suit to recover for personal injuries against Roberg Trucking and others in state court on April 8, 2020. (*See* Doc. 1-B.) "UFCC is defending Roberg Trucking under a reservation of rights" in the state suit. (Doc. 1 (Compl.) ¶ 46.)

## II.     Legal Standards

Summary judgment is appropriate when the Court determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). "Where the

record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted). The Court examines the record and makes all reasonable inferences in the light most favorable to the nonmoving party. *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th Cir. 2016).

The Court applies New Mexico substantive law in this diversity case. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Where no controlling state decision exists, the Court ascertains and applies New Mexico law and predicts what the New Mexico Supreme Court would do if faced with the specific issues. *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). In an action regarding an insurance policy, "[t]he insured party initially bears the burden to show that coverage is established under a provision of coverage." *Nilson v. Peerless Indem. Ins. Co.*, 484 F. Supp. 3d 1050, 1080–81 (D.N.M. 2020) (citing *Battishill v. Farmers All. Ins. Co.*, 127 P.3d 1111, 1113 (N.M. 2006)). "The insurer then bears the burden of proving the policy excludes coverage." *Id.* (citing *Battishill*, 127 P.3d at 1113).

**III.    The Court will grant summary judgment to UFCC because the accident did not arise out of the ownership, maintenance or use of the covered autos.**

UFCC argues that the Policy does not cover the explosion that injured Smith. (Doc. 102 at 9.) The Policy covers accidents that "aris[e] out of the ownership, maintenance or use of [the] insured auto." (Doc. 1-A at 10.) Smith contends that "[t]he explosion occurred out of the ordinary use of the truck and trailer consistent with the foreseeable uses of the insured autos." (Doc. 105 at 4.) The Court sides with UFCC.

Smith argues that Avila-Grado's use of the gauge line falls under the definition of "use" of an insured auto. (*Id.* at 4–5.) Under New Mexico law, coverage is determined by analyzing

"whether the use made of the vehicle at the time of the accident logically flows from and is consistent with the foreseeable uses of that vehicle." *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1115 (N.M. 1990) (citing *Sanchez v. Herrera*, 783 P.2d 465, 467 (N.M. 1989)). In *Sanchez*, the owner of an insured truck and two companions drove the truck on a hunting trip. 783 P.2d at 465. On their way home, they unloaded their guns in the cab of the truck. *See id.* In the process, one of the men accidentally fired his gun, injuring another man. *Id.* The insurer argued that the policy did not cover the accident, because it "did not result from use of the truck." *Id.* at 466. The parties agreed that the policy "extend[ed to] those activities that are connected with use of the vehicle" and "that use of a pickup for hunting" and "transportation of guns . . . incident to use of the vehicle for hunting" are foreseeable. *Id.* The court created "the following rule to determine coverage: 'whether the use made of the vehicle at the time of the accident logically flows from and is consistent with the foreseeable uses of that vehicle.'" *Am. Gen. Fire*, 799 P.2d at 1115 (quoting *Sanchez*, 783 P.2d at 467).

In *American General Fire*, a dispute arose about injuries sustained by an individual (Michael) using the hydraulic lift on an insured vehicle. *See id.* at 1114. The insured van was equipped with a ramp to allow the owner (Wade), who used a wheelchair, to enter and exit the van. *See id.* "The injuries arose when Michael was trying to unload Wade in his wheelchair from the van." *Id.* at 1115. "She was using a hydraulic lift, but apparently the brake on the chair was set, and she was unable to push Wade over the edge created by the ramp on the side of the van." *Id.* "She tried to lift the wheelchair over the edge and allegedly sustained a back injury." *Id.* The New Mexico Supreme Court found that it was a foreseeable and "necessary condition, that, in using the van, Wade would have to enter into and exit from the vehicle." *Id.* at 1116. Similarly, both the use of the hydraulic lift and the assistance of another person were reasonably foreseeable. *Id.* Because

6

"[t]he cause of the accident was reasonably connected to a use of the vehicle," the court found that the "accident was within the scope of" the policy. *Id.*

Smith argues that Avila-Grado's use of the "gauge line as part of skimming oil into a tanker trailer logically flows from and is consistent with the foreseeable uses of a tanker trailer." (Doc. 105 at 6.) Because a driver must measure the oil inside of the tanks in order to skim the oil, using the gauge line is "foreseeable" and "necessary." (*Id.*) While that may be true, the Court finds that *Sanchez* and *American General Fire* are distinguishable from the circumstances here. In *Sanchez*, the gun discharged inside the truck. In *American General Fire*, the ramp was connected to the van. In both cases, an individual was *using* the insured vehicle in some way (either sitting inside the vehicle or using equipment attached to the vehicle). These examples comport with New Mexico's coverage rule that analyzes "whether the *use made of the vehicle* at the time of the accident logically flows from and is consistent with the foreseeable uses of that vehicle." *Am. Gen. Fire*, 799 P.2d at 1115 (quoting *Sanchez*, 783 P.2d at 467) (emphasis added). Here, Avila-Grado was completely removed from the insured vehicles. He was away from the truck and trailer, up on a catwalk, using equipment that was not attached or connected to the insured vehicles. While Avila-Grado needed to measure the oil before using the vacuum truck, this measurement did not involve *use* of the truck or trailer. The Court finds that the accident does not fall within the Policy's coverage, as it did not "aris[e] out of the ownership, maintenance or use of [the] insured" vehicles. (*See* Doc. 1-A at 10.) Accordingly, the Court will grant UFCC's motion for summary judgment on the issue of its duty to indemnify.

Smith also argues that this issue should be decided in the underlying state case. (Doc. 105 at 7.) He asserts that "the oil skimming operation is much more involved than just sucking out oil from the tanks." (*Id.*) Using a gauge line to measure oil "is part of the skimming operation." (*Id.*)

7

He contends that "[t]hese are facts that need to be developed in the underlying state action and not in this collateral proceeding." (*Id.*) Yet, Smith has already stipulated that the gauge line was not attached to the insured autos. (*See* Doc. 97 at 2.) He fails to explain what other facts need to be developed to determine the issue of coverage, a question of law properly before this Court, as Judge Parker found earlier in this case. (*See* Doc. 32.) *See, e.g.*, *W. Am. Ins. Co. v. Atyani*, 338 F. Supp. 3d 1227, 1235 (D.N.M. 2018) ("there is no rigid requirement that all coverage disputes that turn on disputed facts must be determined in an underlying state court action, and this is particularly true when coverage issues are not even addressed in the underlying action").

### IV.   The Court will grant default judgment to UFCC.

UFCC contends that it has no duty to defend Roberg Trucking. (*See* Compl. ¶ 13.) It moves for default judgment on this issue, as Roberg Trucking has not entered an appearance in this lawsuit.[3] (*See* Doc. 103.) "Upon a motion for default judgment, a district court accepts as true all well-pled allegations in a complaint, except those related to proving damages." *Nev. Gen. Ins. Co. v. Anaya*, 326 F.R.D. 685, 693 (D.N.M. 2018) (citing *United States v. Craighead*, No. 05-6227, 176 F. App'x. 922, 2006 WL 936684, at *2 (10th Cir. Apr. 12, 2006)). Before granting a default judgment, the Court must ensure that it has personal and subject matter jurisdiction over the parties and decide "whether the well-pled allegations of the complaint, if true, state a claim for relief." *Id.* (quotation and citations omitted).

The Court has personal and subject matter jurisdiction over the parties. The allegations in the Complaint show that Morales is a resident of New Mexico. (Compl. ¶ 2.) "UFCC is a foreign corporation incorporated in the State of Ohio . . . ." (*Id.* ¶ 1.) The Court has subject matter

---

[3] Smith opposes the motion on the basis that he is "similarly situated" and has a "closely related defense" due to his argument regarding UFCC's duty to indemnify. (Doc. 106 at 2.) Because the Court finds that UFCC has no duty to indemnify, Smith's argument is unavailing.

jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 1332.

Morales was personally served with a summons and the Complaint in Texas on May 5, 2021. (*See* Doc. 67.) Under Federal Rule of Civil Procedure 4(e)(1), "an individual . . . may be served . . . by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Texas Rule of Civil Procedure 106(a)(1) provides that "the citation must be served by . . . delivering to the defendant, in person, a copy of the citation, showing the delivery date, and of the petition . . . ." New Mexico Rule 1-004(F)(1)(a) states that "[p]ersonal service of process shall be made upon an individual by delivering a copy of the summons and complaint . . . to the individual personally . . . ." Service here was proper under either New Mexico or Texas law. Morales has failed to appear in this case or answer the complaint. UFCC requested the Clerk of Court enter default against Morales on August 2, 2021. (Doc. 73.) The Clerk's Entry of Default was filed the next day. (Doc. 74.)

The Court also concludes that the allegations in the Complaint, taken as true, provide a sufficient basis for entry of default judgment on the duty to defend. The allegations establish that UFCC insured Morales/Roberg Trucking under a policy that provided coverage for accidents that "aris[e] out of the ownership, maintenance or use of [an] insured auto . . . ." (Compl. ¶ 9.) At the time of the explosion, Avila-Grado "was away from the Roberg vehicle, on top of and opening the lid of a tank and was in the process of placing an ungrounded line into the tank." (*Id.* ¶ 31.) Taking these allegations as true, the Court finds that the Complaint provides a sufficient basis for the declaratory relief that UFCC seeks.

**THEREFORE**,

**IT IS ORDERED** that UFCC's Second Motion for Summary Judgment for Declaratory

Judgment Relief against Defendant Patrick Smith (Doc. 102) is **GRANTED**;

**IT IS FURTHER ORDERED** that UFCC's Third Motion for Default Judgment against Defendant Diana Morales d/b/a Roberg Trucking (Doc. 103) is **GRANTED** and that **DEFAULT JUDGMENT** is entered against Defendant Morales d/b/a Roberg Trucking.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE